UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JACQUELYN SCARBARY, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>GEORGIA DEPARTMENT OF )<br>NATURAL RESOURCES; MARK )<br>WILLIAMS, in his official capacity )<br>as the COMMISSIONER of the )<br>GEORGIA DEPARTMENT OF )<br>NATURAL RESOURCES; and )<br>JUDSON TURNER, in his official )<br>capacity as the DIRECTOR of the )<br>ENVIRONMENTAL PROTECTION )<br>DIVISION of the GEORGIA )<br>DEPARTMENT OF NATURAL )<br>RESOURCES, )<br>)<br>Defendants. ) | **Civil Action No.**<br><br>_____<br><br>**Jury Trial Demanded** |

**COMPLAINT**

COMES NOW, Plaintiff Jacquelyn Scarbary ("Ms. Scarbary" or "Plaintiff") and brings this *Complaint*, pursuant to Title VII of the Civil Rights Acts of 1964 ("Title VII") and O.C.G.A. § 45-1-4, commonly known as the Georgia Whistleblower Protection Act ("WPA"), against the Georgia Department of Natural Resources ("DNR"), Mark Williams ("Williams") in his official capacity as the Commissioner of DNR, and Judson Turner ("Turner") in his official

capacity as the Director of the Environmental Protection Division ("EPD") of DNR.

## JURISDICTION AND VENUE

1.

This Court has subject matter jurisdiction over this matter, which arises under federal law, pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. 1367.

2.

Venue is proper in this Court because the violations of Plaintiff's rights alleged herein were committed in this division of this judicial district.

## PARTIES

3.

Ms. Scarbary is a former employee of DNR/EPD's Hazardous Site Response Program. Ms. Scarbary is a female citizen of the state of Georgia, and submits herself to the jurisdiction of this Court. At all times relevant to this Complaint, Ms. Scarbary was an "employee" as defined by Title VII and a "public employee" as defined by the WPA.

4.

Defendant DNR is an "employer" as defined by Title VII and a "public employer" as defined by the WPA. DNR may be served with the summons and

complaint by personal service on Commissioner Mark Williams at his office, which is located at 2 Martin Luther King Jr. Drive, SE, Suite 1252, East Tower, Atlanta, GA 30334.  This Court has personal jurisdiction over DNR.

5.

Defendant Mark Williams is sued in his official capacity as the Commissioner of DNR. Mr. Williams may be served with the summons and complaint by personal service at his office, which is located at 2 Martin Luther King Jr. Drive, SE, Suite 1252, East Tower, Atlanta, GA 30334. This Court has personal jurisdiction over Mr. Williams.

6.

Defendant Judson Turner is sued in his official capacity as the Director of EPD. EPD is a division of DNR. Mr. Turner may be served with the summons and complaint by personal service at the EPD office, which is located at 2 Martin Luther King Jr. Drive, SE, Suite 1152, East Tower, Atlanta, GA 30334.  This Court has personal jurisdiction over Mr. Turner and EPD.

**FACTS**

7.

Ms. Scarbary began her employment with DNR in 1999. She worked primarily as a member of EPD's Response and Remediation Program (formerly the "Hazardous Site Response Program").

8.

Ms. Scarbary received positive evaluations throughout her employment and had no significant history of employment-related discipline.

9.

In 2011, Ms. Scarbary was made aware of a number of opportunities for leadership positions on EPD's Emergency Response Team (ERT).

10.

She inquired of a senior member of the ERT, Mr. Jerry R. Campbell ("Campbell"), about the opportunity.

11.

In response, Campbell told Ms. Scarbary that he would recommend her for the promotion if she would email him nude photos of herself.

12.

Campbell indicated that he had some influence over the official who was making the decisions regarding the opportunities.

13.

Ms. Scarbary sent the photos to Campbell as requested, under duress.

14.

Ms. Scarbary did receive the leadership positions.

15.

Ms. Scarbary served on the ERT from 2011 until 2013.

16.

As a member of the ERT, Scarbary developed extensive experience responding to hazardous waste sites and helping to oversee the cleanup of same.

17.

During the summer of 2013, a new ERT was formed.

18.

Campbell was promoted to the position of Manager of the new ERT.

19.

An opportunity arose for leadership positions on the new ERT.

20.

Campbell had a primary decision-making role with respect to who would be appointed to the new ERT.

21.

Ms. Scarbary, with her years of experience in responding to and managing hazardous waste sites, was highly qualified for a leadership role on the new ERT.

22.

At the time, Ms. Scarbary had twelve (12) years of experience in overseeing the cleanup of hazardous waste sites and two (2) years experience as a member of an ERT.

23.

Jim Ussery, the Assistant Director of EPD, specifically recommended Ms. Scarbary to Campbell via email, stating that Ms. Scarbary "knows ERT best" and that he strongly recommended that she be added to the ERT.

24.

Ms. Scarbary approached Campbell about a position on the ERT

25.

Campbell responded by stating, "what are you going to give me this time?"

26.

Ms. Scarbary interpreted Campbell's inquiry in the context of his previous solicitations and believed he was again requesting some sort of sexual favor from Ms. Scarbary in exchange for a promotion.

27.

This time, however, Ms. Scarbary refused to give Campbell anything in exchange for a position on the ERT.

28.

Ms. Scarbary did not receive a position on the new ERT.

29.

Upon information and belief, a number of the candidates selected were substantially less qualified for the ERT than Ms. Scarbary.

30.

Campbell continued to sexually harass Ms. Scarbary by making numerous lewd and harassing phone calls to her in the months that followed.

31.

Despite Campbell's frequent harassment, Ms. Scarbary did not immediately report his actions to anyone at EPD due to fear of suffering retaliation.

32.

Finally, in or around May of 2014, Ms. Scarbary reported to her manager, David Reuland, Campbell's history of sexual harassment, including his solicitation of nude photos from her.

33.

Less than a week after Ms. Scarbary's statement to Mr. Reuland, she was called into a meeting with Mr. Randall Harris, Georgia Department of Natural Resources' ("DNR") Human Resource Manager, and a young woman named

Stacy (last name unknown), who is believed to be a member of DNR's Human Resources staff.

34.

In that meeting, Ms. Scarbary spent nearly an hour explaining to Stacy and Mr. Randall the history of *quid pro quo* sexual harassment by Campbell.

35.

On June 9, 2014, Ms. Scarbary was served with a letter commanding her to report to the GBI Offices on Panthersville Road in Decatur, Georgia on June 12, 2014, to take a polygraph examination.

36.

Ms. Scarbary complied with this letter and arrived at the GBI offices on June 12, 2014 as requested.

37.

When she arrived at the GBI office, she met with a GBI investigator, who began interviewing her regarding the same facts and circumstances that she had previously discussed with Mr. Harris and Stacy.

38.

Ms. Scarbary's interview with the GBI investigator lasted for over two (2) hours.

39.

At the end of the interview, the investigator told Ms. Scarbary that everything she told him was consistent with his records, and he informed her there would be no need for a polygraph test.

40.

During her interview with the GBI investigator, Ms. Scarbary learned, for the first time, that Campbell had distributed the nude photos of her to other DNR officials, including Mr. Harris, without her consent.

41.

On June 16, 2014, Ms. Scarbary emailed Mr. Harris to express her frustration that both he and the GBI investigator seemed to be focused on their confusion regarding the timeline of events instead of the fact that she was clearly the victim of *quid pro quo* sexual harassment, writing:

> … it does not matter *when* I applied or for *what* position. I experienced sexual harassment due to a senior member of the team using his position to exhort [sic] something from me in order to recommend me for a position on the team. Although more qualified than other applicants, I would not have otherwise made it on the team without complying.

42.

Ms. Scarbary further objected, in her email, to the fact that Campbell had distributed the photos of her to third parties.

43.

Two days later, on June 18, 2014, Ms. Scarbary was informed by Branch Chief Jeff Cowns that she was being terminated, effective immediately. She was escorted from the building at that time, but was given no reason for her termination.

## SUBSTANTIVE CLAIMS

### Title VII Retaliation

44.

By this reference, Plaintiff incorporates the previous paragraphs as if fully set forth herein.

45.

Ms. Scarbary timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) within 180 days of her termination, outlining her charges of sex discrimination and retaliation.

46.

The U.S. Department of Justice issued to Ms. Scarbary a "Notice of Right to Sue" on May 27, 2015, with respect to these charges. (Attachment 1).

47.

This action is brought within 180 days of the issuance of the Notice of Right to Sue.

48.

Title VII forbids the taking of adverse employment action against an employee in retaliation for opposing conduct the employee reasonably believes to be in violation of Title VII.

49.

Based on the facts set forth herein, and additional evidence to be presented at trial, Defendants retaliated against Ms. Scarbary for her opposition to conduct she reasonably believed to be discriminatory, by terminating her less than a week after she reported Campbell's sexual harassment to the GBI, and just two days after she sent an email to Harris specifically complaining of Campbell's sexual harassment and of the denial of employment opportunities on the basis of her sex.

50.

Defendants' violations of Title VII were willful, knowing, malicious, or carried out in reckless disregard for their lawfulness.

51.

Defendants are liable for all damages resulting from this violation of Title VII, including economic, compensatory, and punitive damages, plus attorneys' fees and costs.

## Georgia Whistleblower Act

52.

Pursuant to O.C.G.A. § 45-1-4(b) and (d)(2), it is unlawful for a public employer to retaliate against a public employee for disclosing fraud, waste, abuse, or violations of law, rules, or regulations, in relation to operations under the jurisdiction of such public employer.

53.

Pursuant to O.C.G.A. § 45-1-4(d)(3), it is unlawful for a public employer to retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule or regulation.

54.

Plaintiff's termination was carried out in retaliation for Plaintiff's reporting of abuse and violations of law, specifically, *quid pro quo* sexual harassment and denials of equal employment opportunities on the basis of sex.

55.

Mrs. Scarbary suffered damages due to DNR's acts of retaliation, including lost wages, benefits of employment, emotional distress and other damages to be proven at trial.

56.

DNR is liable for all damages proximately resulting from these unlawful acts as described herein, in an amount to be determined by the enlightened conscience of the jury.

57.

Plaintiff is further entitled to all equitable relief afforded her by the WPA.

58.

Plaintiff is further entitled to recover all reasonable attorneys' fees and costs associated with the enforcement of his rights under the WPA.

**WHEREFORE**, Plaintiffs respectfully requests the following relief:

a) That a trial by jury be had on all issues for which a jury trial is permitted under law;

b) That damages be awarded against the Defendant to compensate the Plaintiff for the injuries suffered as a consequence of the Defendant's actions in an amount to be determined by the enlightened conscious of the jury;

c) That attorney's fees and expenses of litigation be awarded to Plaintiff;

d) That prejudgment and post-judgment interest be awarded; and

e)       That the Court award such other equitable or monetary relief as the Court deems just and proper.

Respectfully submitted, this 17th day of June, 2015.

/s/ James E. Radford
James E. Radford
Georgia Bar No. 108007
Caleb Gross
Georgia Bar No. 960323

*Counsel for Plaintiff*


Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0302
james@decaturlegal.com
caleb@decaturlegal.com